### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEWIS D. BAKER, | : |
|     Plaintiff, | : Case No. _____ |
| v. | : JURY TRIAL DEMANDED |
| LAWSON PRODUCTS, INC., MICHAEL G. DECATA, ANDREW B. ALBERT, I. STEVEN EDELSON, LEE S. HILLMAN, J. BRYAN KING, MARK F. MOON, and BIANCA MARTINEZ RHODES, | : **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
|     Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1. On December 29, 2021, Lawson Products, Inc. ("Lawson" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to be acquired by affiliates of LKCM Headwater Investments (the "Proposed Merger").

2. On February 10, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

3. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

5. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District. *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

7. Plaintiff is and has been continuously throughout all relevant times the owner of Lawson common stock. Plaintiff is a resident of this District.

8. Defendant Lawson is a Delaware corporation. Lawson's common stock is traded on the NASDAQ under the ticker symbol "LAWS."

9. Defendant J. Bryan King is Chairman of the Board of Directors of Lawson (the "Board").

10. Defendant Michael G. DeCata is President, Chief Executive Officer, and a member of the Board.

11. Defendant Andrew B. Albert is a member of the Board.

12. Defendant I. Steven Edelson is a member of the Board.

13. Defendant Lee S. Hillman is a member of the Board.

14. Defendant Mark F. Moon is a member of the Board.

15. Defendant Bianca Martinez Rhodes is a member of the Board.

16. Defendants identified in ¶¶ 9-15 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

17. Lawson sells and distributes specialty products to the industrial, commercial, institutional and government maintenance, repair and operations market.

18. On December 29, 2021, Lawson entered into the Merger Agreement.

19. The press release announcing the Proposed Merger provides as follows:

Lawson Products, Inc. (NASDAQ: LAWS) ("Lawson"), a leading distributor of products and services to the MRO marketplace, and LKCM Headwater Investments ("LKCM Headwater"), the private investment arm of Luther King Capital Management Corporation, today jointly announced the execution of definitive merger agreements pursuant to which Lawson will combine in an accretive transaction on an adjusted basis with two of LKCM Headwater's portfolio companies, TestEquity and Gexpro Services, in an all stock transaction. The affiliates of LKCM Headwater that currently own TestEquity and Gexpro Services will receive solely Lawson common stock as consideration for the transactions. All three leading niche industrial distribution companies will be brought under a holding company with all three companies operating independently with their existing management teams as separate divisions.

Upon closing of the combination, Lawson's capitalization is expected to consist of approximately 19,400,000 shares, of which approximately 9,100,000 shares, or 47%, would be held by existing Lawson shareholders, 3,300,000 shares, or 17%, would be held by the existing owners of TestEquity (including LKCM Headwater affiliates and the TestEquity management team), and 7,000,000 shares, or 36%, would be held by the existing owners of Gexpro Services (including LKCM Headwater affiliates and the Gexpro Services management team). Existing owners of TestEquity and Gexpro Services also have the ability to earn an additional 700,000 shares and 1,000,000 shares, respectively, upon achieving certain additional accretion and other metrics set forth in the merger agreements.

Affiliates of LKCM Headwater currently beneficially own approximately 48% of Lawson's outstanding shares. Upon completion of the combination, affiliates of

LKCM Headwater will beneficially own approximately 75% of Lawson's shares, and their ownership would increase to approximately 77% of Lawson's shares if all of the 1,700,000 additional shares are earned.

All Lawson shares outstanding immediately before the completion of the combination will remain outstanding after the combination, and existing Lawson shareholders will continue to hold shares in the combined company.

Combined Holding Company Highlights

Combined estimated pro forma annual revenue of more than $1 billion and combined estimated pro forma annual adjusted EBITDA of more than $100 million

Balanced mix of production (OEM) and maintenance/aftermarket (MRO) serving 120,000+ longstanding customers reduces cyclical impacts of short- and long-term demand drivers

Ability to enhance long-term organic growth rates through offering more products and services to each company's customers and our end markets, many of which are experiencing secular tailwinds

Robust acquisition pipeline with active negotiations with several accretive targets likely to close in the next 6 to 18 months

Enhanced product sourcing opportunities including private label opportunities while expanding channels to market

Ability to leverage best practices, back-office resources and technology across the platform to help drive operating efficiencies and leverage shared solutions

Long-term investor with distribution focus as strategic partner with long-term investment horizon to compliment best-in-class management teams that are well-aligned with shareholders and focused on growing their businesses together

Asset-light business model with keen focus on generating high returns on invested capital

Pro forma debt to adjusted EBITDA of approximately 3x at closing

"Through the combination of these three complementary valued-added distribution businesses, we strongly believe the holding company will be well-positioned to leverage its combined leadership, strong balance sheet and stable cash flow generation to drive more transformational value creation for shareholders," said J. Bryan King, Chairman of the Board of Directors of Lawson and Managing Partner

of LKCM Headwater. "Our confidence in the ultimate success of the combination is evident in that we will receive no cash proceeds, and not sell any shares in connection with the combination. We will maintain a substantial investment in the combined company. We have approached and will continue to approach the combination of these businesses by aligning our interests with those of current Lawson shareholders, as well as the interests of other long-term shareholders in the holding company. Beyond our financial commitment, our investment team has invested, and will continue to invest, substantial amounts of their time engaging in constructive efforts to leverage our resources and extensive distribution expertise to create a more valuable and durable business, without receiving any compensation from the holding company, including my continued service as Chairman on an unpaid basis."

Mr. King continued, "Our long-term value creation perspective in the industrial distribution segment has been refined over decades. This strategy has been heavily vetted with the focus of driving further shareholder returns and creating value with lower risk for each of the three complementary businesses. We believe these businesses will have a greater ability to compound shareholder returns faster through scale, while creating higher sustained returns for investors with the right collection of leadership identifying and executing on organic and inorganic opportunities to sustain that compounding engine."

"This combined publicly-traded specialty distribution holding company is expected to generate estimated pro forma annual revenue of more than $1 billion and estimated pro forma annual adjusted EBITDA of more than $100 million upon the closing of the combination. At these levels, we believe the holding company will be well-positioned to reinvest opportunistically and selectively in a pipeline of organic and acquisitive growth opportunities in its large, fragmented markets with secular tailwinds. The combination is expected to create the ability to accelerate cash flow growth, maintain the flexibility to opportunistically engage in share buybacks, and further improve the long-term competitive position of each of the industrial distribution verticals within the post-combination holding company," concluded Mr. King.

"As the CEO and a fellow shareholder of Lawson, I am excited to be moving forward with the LKCM Headwater team to have an aligned vision and mission of creating a best-in-class specialty distribution holding company. This combination transforms each of our highly complementary businesses, creates a greater level of scale, enables accelerated growth, and expands our competitive advantage," said Michael DeCata, President and Chief Executive Officer of Lawson. "I am proud of the job our team has done over the past several years building a platform for growth and improving profitability. This combination will provide all three companies with a more complete offering of products, services, and capabilities to enhance the value proposition for current and future customers. Going forward, we will have a more robust set of acquisition opportunities where cross-selling and cost synergies will play an important role in delivering enhanced financial performance and greater returns to shareholders. We will also benefit significantly from even more

focused support from the LKCM Headwater team and their long history of working proactively with management teams in the industrial distribution segment to maximize long-term shareholder value creation," concluded Mr. DeCata.

Strategic and Financial Rationale

The holding company structure is expected to enable Lawson, TestEquity and Gexpro Services to maintain their respective high-touch, technical, value-added service delivery models and customer relationships within their specialty distribution businesses under the leadership of their separate business unit management teams with continued oversight from Lawson's board of directors. The holding company will have the ability to utilize its combined financial resources to accelerate its expansion strategy through business acquisitions and organic growth across the combined platform. At the same time, the holding company structure will enable the combined companies to leverage best practices, back-office resources and technology across the platform to help drive operating efficiencies and leverage shared solutions.

The combination is expected to increase the reach of the combined companies into the highly fragmented OEM/MRO distribution markets and broaden their service capabilities, including vendor managed inventory, beyond Lawson's existing MRO focus. Lawson currently services approximately 90,000 customers, while TestEquity and Gexpro Services provide support to over 30,000 and over 1,800 customers, respectively. The combination will result in greater end market diversification for the holding company with the addition of a significant prescence in the OEM distribution and electronic test and measurement equipment and supplies market. The holding company will have the ability to be a one-stop provider for OEM and MRO customers and will enable Lawson, TestEquity and Gexpro Services to cross-sell and deliver their services across the combined customer base.

The combination will also provide the opportunity to expand digital marketing channels to Lawson's historical sales channel of on-site sales representatives. In addition, the combination will enable the combined companies to improve their product sourcing capabilities and purchasing power within overlapping and new suppliers.

Leadership and Governance

Upon the closing of the combination, Lawson, TestEquity and Gexpro Services will continue to be led by their existing senior management teams. J. Bryan King will continue to serve as Chairman of the Board of Directors of the holding company alongside the existing individuals serving on the board of directors of Lawson. Robert Connors will continue to serve as the Chief Executive Officer of Gexpro Services and Steve Newland will continue to serve as Chief Executive Officer of TestEquity. Michael DeCata and Ron Knutson will assume the positions of Chief Executive Officer and Chief Financial Officer, respectively, of the holding

company in addition to their responsibilities at Lawson's existing operating company.

Timing, Approval and Advisors

The combination is subject to various closing conditions, including receipt of regulatory approvals and the approval by the affirmative vote of the holders of a majority of the total voting power of Lawson shares not owned by various affiliates of LKCM Headwater present in person or by proxy at a special stockholders meeting, where a majority of the outstanding Lawson shares not owned by various affiliates of LKCM Headwater are present in person or by proxy at the special meeting. The combination is expected to close during the second quarter of 2022. The Board of Directors of Lawson formed a Special Committee of independent directors who are independent of LKCM Headwater to evaluate and negotiate the transactions on behalf of Lawson. The Special Committee approved, among other things, the merger agreements and the transactions contemplated thereby and recommended that Lawson's Board of Directors approve the merger agreements and the transactions contemplated thereby. Thereafter, Lawson's Board of Directors (acting on the recommendation of the Special Committee), with certain directors recusing themselves from the vote, approved among other things the merger agreements and the contemplated transactions.

Cowen served as exclusive financial advisor to the Special Committee. Piper Sandler served as exclusive financial advisor, and provided a fairness opinion, to TestEquity and Gexpro Services. Baird served as financial advisor to LKCM Headwater. Jenner and Block served as counsel to the Special Committee and Lawson, and Mayer Brown served as counsel to TestEquity and Gexpro Services.

20. On February 10, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

### Financial Projections

21. The Proxy fails to disclose material information regarding Lawson's TestEquity's, and Gexpro Services' financial projections, specifically, the line items underlying the financial projections.

### Financial Analyses

22. The Proxy fails to disclose material information regarding the financial analyses conducted by Cowen.

7

23. Regarding Cowen's Selected Publicly Traded Companies Analyses, the Proxy fails to disclose the individual multiples and metrics for the companies utilized by Cowen.

24. Regarding Cowen's Discounted Cash Flow Analyses, the Proxy fails to disclose: (i) the terminal values utilized by Cowen; and (ii) the inputs and assumptions underlying the discount rates and multiples ranges utilized by Cowen.

## COUNT I

**Claim Against the Individual Defendants and Lawson for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

25. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

26. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

27. Lawson is liable as the issuer of these statements.

28. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

29. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

30. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

31. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

32. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

33. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

34. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

35. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

36. The Individual Defendants acted as controlling persons of Lawson within the meaning of Section 20(a) of the Exchange Act as alleged herein.

37. Due to their positions as officers and/or directors of Lawson and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

38. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

39. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to

control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

40. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

41. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

42. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

43. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

44. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for

attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 7, 2022       **GRABAR LAW OFFICE**

            By: _____
            Joshua H. Grabar (#82525)
            One Liberty Place
            1650 Market Street, Suite 3600
            Philadelphia, PA 19103
            267-507-6085
            jgrabar@grabarlaw.com

            *Counsel for Plaintiff*